## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

DARRELL P. MILLER,

        Plaintiff,

vs.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

        Defendant.

No. C11-3030-PAZ

**MEMORANDUM OPINION AND
ORDER**

---

### Introduction

The plaintiff, Darrell P. Miller, seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). Miller contends that the administrative record ("AR") does not contain substantial evidence to support the Commissioner's decision that he is not disabled. For the reasons that follow, this matter is **remanded** pursuant to the sixth sentence of 42 U.S.C. § 405(g).

### Background

Miller was born in 1959, completed high school, and previously worked as a tractor-trailer truck driver, construction worker, and roller operator. AR 180, 207, 210, 269. Miller applied for SSI on February 22, 2008, and for DIB on March 6, 2008, alleging disability beginning on November 20, 2002, due to a head injury, memory problems, lack of sense of smell, and a steel jaw. AR 36, 180-81, 206. The

Commissioner denied Miller's applications initially and again on reconsideration; consequently, Miller requested a hearing before an Administrative Law Judge ("ALJ"). AR 107-25.  On February 3, 2010, ALJ Robert J. Labrum held a hearing in which Miller and a vocational expert ("VE") testified.  AR 51-70.  On February 24, 2010, the ALJ issued a decision finding Miller not disabled since the alleged onset date of disability of November 20, 2002.  AR 33-46.  Miller sought review of this decision by the Appeals Council and submitted additional evidence.  AR 9-27.  The Appeal Council denied review on April 11, 2011 (AR 1-7), finding that the additional evidence was "about a later time" after the ALJ's decision and thus did "not affect the decision about whether [Miller was] disabled beginning on or before February 24, 2010" (AR 2).  The ALJ's decision thus became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.

On June 10, 2011, Miller filed a complaint in this court seeking review of the ALJ's decision.  On July 12, 2011, with the parties' consent, Judge Mark W. Bennett transferred the case to the undersigned for final disposition and entry of judgment.  The parties have briefed the issues, and the matter is now fully submitted.

### Summary of Evidence

#### A.    William Morton, Psy.D.

On March 29, 2004, William Morton, Psy.D., a licensed clinical psychologist, performed a consultative psychodiagnostic examination at the request of the Iowa Department of Disability Determination Services ("DDS") (AR 272-75) to determine Miller's "ability to function in various work related activities, paying particular attention to his memory, level of intellectual functioning, and current mental status."  AR 272.

2

The ALJ reviewed Dr. Morton's opinion and found as follows:

Dr. Morton reviewed the claimant's records, interviewed the claimant, performed a mental status examination, and administered the Wechsler Adult Intelligence Scale – Third Edition (WAIS III) as well as the Wechsler Memory Scale – Third Edition (WMS III). On the WAIS III, the claimant obtained a Verbal IQ score of 71, a Performance IQ score of 86, and a Full Scale IQ score of 76. Dr. Morton noted that intellectually, the claimant was functioning in the borderline intellectual range of mental abilities based on his IQ scores. In addition, results of the WMS III revealed that the claimant scored no lower than mildly impaired in any of the areas assessed; his delayed memory appeared to be marginally superior to his immediate memory, specifically in the area of auditory recognition indicating that once the claimant was able to encode information into storage it was likely to remain in his long term stores. Dr. Morton opined that it appeared that there were mild mental limitations in regard to remembering and understanding instructions, procedures, and locations; carrying out instructions; maintaining attention, concentration, or pace; interacting appropriately with supervisors, coworkers, and the public; and using good judgment and responding appropriately to changes in the workplace. Dr. Morton noted that the claimant's limitations were based on his mild memory impairment and his current level of depression, for which the claimant was receiving no treating [sic]. Dr. Morton opined that it was likely that the claimant's stated limitations would decrease with adequate mental health care. Dr. Morton diagnosed the claimant with dysthymic disorder and borderline intellectual functioning. Furthermore, Dr. Morton assigned the claimant a Global Assessment of Functioning (GAF) score of 65. The GAF score is a clinician's rating of an individual's overall psychological, social and occupational functioning, on a scale of 0 to 100. A GAF score of 61 to 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, [with] some meaningful interpersonal relationships.

AR 40-41 (citations omitted).

On June 5, 2008, Dr. Morton again examined Miller at DDS's request. AR 276-78. The ALJ summarized Dr. Morton's findings as follows:

3

Dr. Morton reviewed the claimant's records, interviewed the claimant, performed a mental status examination, and administered the Wechsler Memory Scale – Third Edition (WMS III).  Dr. Morton reported that the claimant's activities of daily living included the following: the claimant got adequate exercise; he slept approximately eight hours per twenty-four hour day; he had no history of in-home accidents; the most complex food he was able to prepare by himself was steak; in general, his home was neat and clean; he was able to participate in straightening up the home; he was able to participate in outside work; he was able to participate in laundry care; he was able to groom at an adequate level by himself; he was able to adequately manage finances without the assistance of others; he was able to control impulses related to spending money; and he did not make major purchases. Accordingly, Dr. Morton opined the claimant's overall level of independent functioning was adequate.  The claimant's results from the WMS III revealed that the claimant had mild impairment in memory functioning; his delayed memory appeared to be equivalent to his immediate memory indicating that once he was able to encode information into storage it was likely to remain in his long-term stores, but only as well as was seen in his short term memory.  Dr. Morton opined that it appeared that there were mild mental limitations in regard to remembering and understanding instructions, procedures, and locations; there were mild mental limitations in regard to carrying out instructions; there were moderate mental limitations in regard to maintaining attention, concentration, and pace; there were minimal mental limitations in regard to interacting appropriately with supervisors, coworkers, and the public; and there were minimal mental limitations in regard to using good judgment and responding appropriately to changes in the workplace.  Dr. Morton diagnosed the claimant with cognitive disorder not otherwise specified and borderline intellectual functioning by history. In addition, Dr. Morton assigned the claimant a GAF score of 60.  A GAF score of 51 to 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.

AR 41 (citation omitted).

**B.      State Agency Consultant**

On June 23, 2008, Herbert Notch, Ph.D., a DDS consultant, assessed Miller's mental residual functional capacity ("RFC") and completed a psychiatric review technique form.  AR 280-97.  The ALJ found that Dr. Notch

> reviewed the claimant's medical history for the relevant period and noted the claimant's medically determinable impairments of cognitive disorder, borderline intellectual functioning, and history of dysthymic disorder.  Dr. Notch opined the claimant had mild restriction of activities of daily living; mild difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace.  Dr. Notch noted that the claimant sustained a head injury in the past; since that time he had returned to work, but had been off work since 2002.  In March 2004, he was tested with the WAIS III and scored a Verbal IQ score of 71, a Performance IQ score of 86, and Full Scale IQ score of 76; however, there may have been some improvement with time, as the current consultative examiner (same doctor) opined that the claimant was functioning in the average range.  The claimant was tested during both consultative examinations with the WMS III, and was either in the average or low average range on all areas except immediate auditory memory, immediate memory, and delayed auditory memory which were all in the mildly impaired range, as of June 2008.  Dr. Notch noted that that was somewhat different than findings in March 2004 in which the mildly impaired ranges applied to immediate visual memory, immediate memory, and delayed visual memory.  Based on those findings it appeared that the claimant had improved in his visual memory abilities, while declining somewhat in his auditory memory abilities.  Dr. Notch further noted that long term memory was not significantly limited and the examining source felt that once encoded, information and task instructions would be retained.  A current examining source statement included the opinion that the claimant had mild limitations in remembering and understanding instructions, mild limitations in carrying out instructions, moderate limitations in attention and concentration, and minimal limitations in interaction and using judgment.  Dr. Notch opined that the claimant had the ability to retain the capacity for a wide range of semi-skilled tasks; there was no current evidence of dysthymia as previously diagnosed.

AR 41-42.

C.     *Plaintiff's Testimony*

As set forth in his brief, Miller's testimony was as follows:

He testified that his work history involved truck driving. When asked about his current situation as to his ability to work, he testified, "No jobs right now, because of the economy." Other than not having a sense of smell, he reported no physical condition affecting his ability to work.

He stated that people "don't want to hire" him. He said that Social Security took away his voting privileges because he couldn't make the right decision. When asked whether he is receiving any form of assistance, he reported getting Medicaid for taking care of a lady. He testified that he lives with her, helps her get in and out of bed, does her housework and shopping. Despite initially reporting no work since 2009, he did testify to receiving compensation for the care of this friend. He explained that he is limited to 108 hours per month.

When questioned about his medical impairment, he testified that his car accident, "[] made me slower. I mean, you have to think about things before you do anything and make sure you do it right." He stated that for a time, he was "mentally disabled, long term memory gone, short term memory in doubt, brain dead."

As to prior mental health treatment, when asked if he ever spent time in a mental health institute, he stated, "I probably spent five years, five years or longer. I was there for a while." He stated he was prescribed anti-depressants, but did not have the finances to afford them.

Doc. No. 12 at 7-8 (citations and footnote omitted).

The ALJ summarized Miller's testimony as follows:

The claimant described activities of daily living that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant reported little to no problems with his personal care; he performs house and yard work to include taking out the trash and mowing the yard; he walks and drives a car; he shops in stores for clothes

or groceries; he spends time with others talking and playing card games; and he goes to a friend's house to visit.  The claimant also testified and reported that he cares for an elderly friend to include emptying her catheter, helping transport her to the doctor, taking care of housework, getting her into and out of bed each day, and picking her up and placing her in a wheelchair. The claimant testified that he is paid to perform these tasks. . . .

            . . . .

            It is important to note that the claimant and his representative appeared to be quite focused on the fact that the claimant could not find a job.  The claimant testified that he was unable to obtain employment as there were no jobs open right now due to the economy.  The claimant also testified that there was nothing physically that hindered his ability to be employed other than his inability to smell; the claimant stated that he would like to work a farm or construction job but he had not received any offers of employment.

AR 43.

**D.    *Vocational Expert Testimony***

        The VE classified Miller's past work as performed as follows: (1) tractor-trailer truck driver, semi-skilled and light;[1] (2) construction worker, unskilled and medium;[2] and (3) roller operator, semi-skilled and medium.  AR 269.

        The VE testified that a hypothetical individual could not perform Miller's past work in response to the following question by the ALJ:

_____

        [1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

        [2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

> [P]lease assume you have an individual with Mr. Miller's age, education, and work history. This individual has no physical limitations, but has the following other limitations: this individual cannot perform [work] that requires use of the smell [sic], such as working around gasoline or other similar hazards that are detected by odor. And this individual can only make simple work-related judgments and decisions and understand, remember, and carry out only short, simple instructions.

AR 67-68. Such an individual could perform jobs in the national or regional economy such as dining room attendant, laundry worker, or housekeeper/cleaner. AR 68-69. Such an individual could not perform full-time, competitive employment, however, if the individual additionally operated at a slow pace for up to one-third of the work day. AR 69.

### E.    *Eva Christiansen, Ph.D.*

After the ALJ issued his unfavorable decision, Miller submitted additional evidence to the Appeals Council of a report dated June 11, 2010, of a psychological evaluation conducted by Eva Christiansen, Ph.D., a clinical psychologist, on June 4, 2010. AR 12-25. Dr. Christiansen conducted a mental status examination, reviewed Miller's records, and interviewed Miller, his sister, and his girlfriend. AR 12, 19. Dr. Christiansen found as follows:

> Mr. Miller's most significant mental disorder is likely to be a dementia due to head injury, with deficits in judgment, reasoning and organization. The procedures of this evaluation present information that is consistent with a history of frontal lobe injury. Deficits of that kind will not necessarily be evident on IQ or memory testing. Neuropsychological testing regarding executive functions would provide such data. From this interview, likely examples of such deficits include but are not limited to the following: He has difficulty placing events in a chronologically accurate order. He was inaccurate regarding the length of time since an event had taken place. He had times that he forgot to eat. He had repeated problems with judgment, such as carrying out work tasks in a safe manner. He was placed at

Cherokee [Mental Health Institute] because of poor judgment regarding confrontational behavior towards law enforcement officers.

From previous formal testing, Mr. Miller did not display problems with attention and concentration . . . . He has, however, repeatedly been described as having lapses of attention. The observations and reports of his sister and of his girlfriend raise a concern regarding a seizure disorder. His sister has observed episodes that appear to be inattentiveness. His girlfriend has observed a number of such instances, and convinced him that he had a seizure a month ago when he rolled into another car, because he could see the damage to her car and did not know how he came to be where he was or how the damage occurred. . . .

Mr. Miller's current mental status includes a mood disorder with poorly moderated depression and irritability. The mood variations are likely to be personality characteristics that began or were exacerbated because of the head injury. Executive function deficits can have a strong impact on expressing emotion, consistent with Mr. Miller's risky choices in interactions with law enforcement. The Mood Disorder [not otherwise specified] diagnosis is used.

AR 17, 24.

Dr. Christiansen also considered Miller's ability to perform work-related activities:

Mr. Miller's ability to remember and understand instructions and procedures should be adequate for a wide variety of tasks, some at a complex level. The difficulty arises because of the potential that he will make choices that present high risk to his own or others' survival because of a lack of judgment. His ability to perform in jobs with lower risk of such choices is affected by his willingness to criticize and comment negatively to supervisors or authority figures. Attention and concentration when formally measured appear adequate, but there are concerning accounts of absences of attention that need to be evaluated as a possible seizure disorder. Pace was primarily a problem because of his attraction for quicker solutions with minimal thought for safety. Relationships have been uneven, dependent and supportive but ambivalent and confrontational, at times physical. Workplace relationships have apparently not included physical aggression. Judgment is

9

unreliable.  He may not consistently have the ability to adjust to changes in the environment.

AR 17-18, 24-25.

Dr. Christiansen summarized her findings as follows:

Darrell P. Miller is a 51 year old man of Borderline intellectual abilities who suffered a traumatic head injury in 1988.  Lapses in judgment and thinking, and difficulty with chronology, suggest that he suffers from dementia due to head trauma.  He has a mood disorder, with episodic poorly controlled expression of emotions, also likely to be influenced by the head trauma event.

AR 18, 25.

### *Summary of ALJ's Decision*

On February 24, 2010, the ALJ found that Miller (1) had not engaged in substantial gainful activity since the alleged onset date of disability of November 20, 2002; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) was unable to perform his past relevant work; but (5) could perform other work in the national economy such as a dining room attendant, laundry worker, or housekeeper/cleaner.  AR 38-45.  The ALJ accordingly found that he was not disabled from November 20, 2002, through the date of the ALJ's decision.  AR 45.

In so finding, the ALJ found that Miller had the RFC to

perform a full range of work at all exertional levels but with the following nonexertional limitations: he cannot perform work that would require a sense of smell, such as working around gasoline or other similar hazards detected

10

by odor; he can make only simple work related decisions; and he can understand, remember, and carry out no more than short simple instructions.

AR 40.

Regarding Miller's credibility, the ALJ found that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's] residual functional capacity assessment."  AR 42.

### *Disability Determinations and the Burden of Proof*

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

12

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).   "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.*   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000).   The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).   If the

13

claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  At step five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.  *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### The Substantial Evidence Standard

The court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence on the record as a whole.  *Page*, 484 F.3d at 1042.  This review is deferential; the court "must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole."  *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.  *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010); *see Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

Moreover, substantial evidence "on the record as a whole" requires consideration of the record in its entirety, taking into account both "evidence that supports the Commissioner's decision as well as the evidence that detracts from it."  *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)).  The court must "search the record for evidence contradicting the [Commissioner's] decision and give that

14

evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch*, 547 F.3d at 935). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## Discussion

Miller maintains that the ALJ failed to develop fully the record and that new and material evidence necessitates a remand to the Commissioner. Doc. No. 12 at 8-15. The Commissioner asserts that the ALJ properly assessed Miller's credibility and properly

15

developed the medical evidence.  Doc. No. 15 at 9-14.  The Commissioner also contends that substantial evidence supports the ALJ's decision, even in light of the additional evidence submitted to the Appeals Council.  *Id.* at 14-16.

> The sixth sentence of 42 U.S.C. § 405(g) provides in relevant part as follows:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).[3]  "To be considered material, the new evidence must be 'non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied.'  Furthermore, it must be reasonably likely that the Commissioner's consideration of this new evidence would have resulted in an award of benefits."  *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997) (internal citation omitted).  The new evidence must "pertain to the time period for which benefits are sought" and "not concern later-acquired disabilities or subsequent deterioration of a previously non-disabling condition."  *Id.*  "Additional evidence showing a deterioration in a claimant's condition significantly after the date of the Commissioner's final decision is not a material basis for remand, although it may be grounds for a new application for benefits."  *Id.*; *see also Hanson v. Chater*, 895 F. Supp. 1279, 1287 (N.D. Iowa 1995)

---

[3] "Under sentence six, 'the district court does not affirm, modify, or reverse the [Commissioner's] decision; it does not rule in any way as to the correctness of the administrative determination.'"  *Travis v. Astrue*, 477 F.3d 1037, 1039-40 (8th Cir. 2007) (quoting *Melkonyan v. Sullivan*, 501 U.S. 89, 98, 111 S. Ct. 2157, 2163 (1991)); *accord Buckner v. Apfel*, 213 F.3d 1006, 1010 (8th Cir. 2000).  The district court's decision not to remand to the ALJ under sentence six is reviewed for an abuse of discretion.  *Thomas v. Sullivan*, 928 F.2d 255, 260 n.6 (8th Cir. 1991); *accord Geigle v. Sullivan*, 961 F.2d 1395, 1397 (8th Cir. 1992).

("[M]aterial evidence must relate to the claimant's condition on or before the date of the ALJ's decision." (citing *Goad v. Shalala*, 7 F.3d 1397, 1398 (8th Cir. 1993) (per curiam))). Good cause may be established where the claimant's condition and associated records did not exist at the time of the ALJ's hearing. *Thomas*, 928 F.2d at 260; *Goad*, 7 F.3d at 1398. *But see Mouser v. Astrue*, 545 F.3d 634, 637 (8th Cir. 2008); *Hepp v. Astrue*, 511 F.3d 798, 808 (8th Cir. 2008).

The Commissioner maintains that a sentence-six remand for the ALJ to consider Dr. Christiansen's report is not warranted "because the Commissioner is not required to investigate an impairment not alleged in the claimant's application or at the administrative hearing." Doc. No. 15 at 15. According to the Commissioner, a psychological examination report submitted to the Appeals Council, suggesting onset of a mental impairment before the time of the ALJ's decision, "is not a basis for remand when the mental impairment was not alleged at the hearing at the hearing and the record before the ALJ contained no evidence of the impairment." *Id.* "Dr. Christiansen merely related reports of possible seizures that had not been raised previously in consultative examinations or at the administrative hearing." *Id.* at 16. Thus, "there is no reasonable likelihood that the new evidence submitted to the Appeals Council would have changed the decision." *Id.*

Good cause exists for Miller's failure to submit Dr. Christiansen's report to the ALJ because it did not exist at the time of the hearing. *See Thomas*, 928 F.2d at 260. Her report is material because it relates to Miller's condition on or before the date of the ALJ's decision. Contrary to the Commissioner's assertion, Miller alleged mental impairment in his applications for benefits (AR 206). *See Milano v. Bowen*, 809 F.2d 763, 767 n.3 (11th Cir. 1987) ("At oral argument, the Secretary [of Health and Human Services] suggested a separate ground upon which the decision of the district court could be affirmed. The Secretary argued that the new psychological evidence presented by the claimant did not

relate to the previous disability which she had claimed, but rather related to a new and distinct mental disability. This assertion is, however, incorrect. . . . [T]he administrative record amply demonstrates that [the claimant's] original disability complaint encompassed allegations of mental trauma.").

The Commissioner maintains that the ALJ's consideration of Dr. Christiansen's report would not have resulted in an award of benefits. However, Dr. Christiansen's opinion is probative of Miller's condition prior to and at the time of the hearing. This evidence suggests that Miller's impairments imposed limitations that possibly were more severe during the relevant time period than the evidence before the ALJ indicated. *See Geigle*, 961 F.2d at 1397 (holding that district court abused its discretion in failing to remand case to Secretary of Health and Human Services for reconsideration on the basis of new, material evidence because evidence was probative of claimant's condition before hearing). As Miller points out, "[t]he discrepancies between [his] recall of past events as opposed to those of his sister and girlfriend [raise] questions as to [his] own testimony and perception of his daily activities or ability to work. This could affect any analysis of subjective complaints and the credibility of testimony." Doc. No. 16 at 5.

Accordingly, Dr. Christiansen's report merits consideration by the ALJ under the sixth sentence of 42 U.S.C. § 405(g). The court need not address Miller's remaining arguments. *See Cherry v. Heckler*, 760 F.2d 1186, 1194 n.19 (11th Cir. 1985).

### *Conclusion*

This case is remanded under the sixth sentence of 42 U.S.C. § 405(g) for the ALJ to reconsider this case in light of Dr. Christiansen's report dated June 11, 2010. Pursuant to § 405(g),

18

the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

42 U.S.C. § 405(g).

The court retains jurisdiction until the completion of post-remand proceedings. *Travis*, 477 F.3d at 1039; *Hanson*, 895 F. Supp. at 1288.  The Clerk is directed to administratively close this case.

**IT IS SO ORDERED.**

**DATED** this 5th day of April, 2012.

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT